UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERICO NAVARRO PEREZ,<br><br>                            Petitioner,<br>v.<br><br>CHRISTOPHER LAROSE, Facility Administrator at Otay Mesa Detention Center, San Diego, California, et al.,<br><br>                           Respondents. | Case No.: 3:25-cv-02620-RBM-JLB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. 1] |

      Pending before the Court is Petitioner Federico Navarro Perez's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 challenging the lawfulness of his detention by the United States Department of Homeland Security ("DHS"). (Doc. 1.) For the reasons set forth below, the Court **GRANTS** the Petition.

## I.    BACKGROUND

### A.    Factual Background

      Petitioner is an indigenous Guatemalan national who "fled the country due to extortion and threats by one of the transnational criminal organizations in Guatemala." (*Id*. at 7.)[1] He arrived in the United States on December 12, 2024 and was inspected after making an appointment at the Calexico West, California Port of Entry with the "CBPOne

---

[1] The Court cites the CM/ECF electronic pagination for filings unless otherwise noted.

["(CBP One")] application." (*Id.*; Doc. 5 at 2.) The inspecting immigration officer determined Petitioner was inadmissible under 8 U.S.C. § 1182(a)(7)(i)(I) as an immigrant not in possession of a valid entry document. (Doc. 5 at 2.) The same day, Petitioner was issued a Notice to Appear and placed in removal proceedings under 8 U.S.C. § 1229a. (*Id.*) Petitioner was then released from DHS custody on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A) and issued a Form I-94, which was valid for two years. (Doc. 1 at 7; Doc. 5 at 2.)

On April 11, 2025, DHS emailed Petitioner, as part of a mass email sent to CBP One parolees, stating that his parole would be terminated within seven days. (Doc. 1 at 7.) This email provided no reason for the termination and instructed Petitioner to depart the United States immediately. (Doc. 1 at 7.) Petitioner was attending his third required immigration court hearing on July 30, 2025 when he was detained by Immigration and Customs Enforcement ("ICE") after DHS counsel moved to dismiss Petitioner's removal proceedings and place him in expedited removal proceedings. (*Id.* at 8.) Since that date, Petitioner has been detained at the Otay Mesa Detention Center. (*Id.* at 2.) He has received no opportunity to be heard. (*Id.* at 8.)

**B.    Procedural Background**

Petitioner filed his Petition on October 3, 2025. (Doc. 3.) The case was transferred to the undersigned on October 10, 2025. (Doc. 2.) On October 14, 2025, the Court set a briefing schedule on the Petition. (Doc. 3.) Respondents filed a Return to Habeas Petition ("Response") (Doc. 5) on October 20, 2025, and Petitioner filed a Traverse Supporting Petition for Writ of Habeas Corpus ("Reply") (Doc. 8) on October 23, 2025. (Doc. 8.) On October 29, 2025, the Court ordered supplemental briefing. (Doc. 9.) Petitioner filed his Supplemental Briefing ("Supplemental Brief") (Doc. 10) on October 31, 2025, and Respondents filed their Return to Petitioner's Supplemental Briefing ("Supplemental Response") (Doc. 11) on November 7, 2025.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United

States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

### III.  DISCUSSION

Petitioner argues that the Petition should be granted because DHS detained him without providing notice and an opportunity to be heard in violation of the Fifth Amendment's Due Process Clause and revoked Petitioner's parole without considering his individual circumstances in violation of the Administrative Procedure Act ("APA"). (Doc. 1 at 12–17.) Petitioner requests the Court declare that the revocation of his parole, and thus his detention, are unlawful. (*Id*. at 18–19.) Respondents argue that Petitioner is: (1) jurisdictionally barred from bringing his claims under 8 U.S.C. § 1252(g) and for failing to exhaust administrative remedies; and (2) legally detained under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2).

The Court finds that it has jurisdiction over Petitioner's claims because the Petition challenges the legality of Petitioner's parole revocation and continued detention rather than the decision to commence removal proceedings or any act to adjudicate or execute a removal order. The Court also finds that the Petition should be granted because the summary revocation of Petitioner's parole without consideration of his individualized circumstances violates the Due Process Clause and the APA.

**A.  Jurisdiction**

As the Court has an obligation "to determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address Respondents' jurisdictional argument. *Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 94–95 (1998). For the reasons set forth below, the Court finds that it has jurisdiction over Petitioner's claims.

Respondents argue first that the Court lacks jurisdiction to hear this Petition under 8 U.S.C. § 1252(g). (Doc. 5 at 3–6.) This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C § 1252(g). The Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

Petitioner does not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order. (Doc. 8 at 3.) Rather, he challenges "Respondents' wrongful arrest and detention of [Petitioner] given his status and due process rights as a parolee." (*Id.*). He is enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, Case No.: 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025) (emphasis in original); *see also Chavez v. Noem*, --- F. Supp. 3d ---, 2025 WL 2730228, at *3 (S.D. Cal. 2025) (finding the same); *United States v. Hovespian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (noting a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority"). Therefore, § 1252(g) does not strip the Court of jurisdiction.

Respondents argue second that Petitioner's claims "necessarily arise" from the Attorney General's decision to commence removal proceedings against him. (Doc. 5 at 3.) This interpretation of 8 U.S.C. § 1252(g) would "eliminate judicial review of immigration [detainees'] claims of unlawful detention . . . inconsistent with *Jennings v. Rodriguez* and the history of judicial review of the detention of noncitizens under 28 U.S.C. § 2241."

*Sanchez v. LaRose*, Case No.: 25-cv-2396-JES-MMP, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)); *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022)). Accordingly, as other courts in this District have found in similar cases, the Court has jurisdiction to hear Petitioner's claims that his detention is unlawful under 28 U.S.C. § 2241. *See Sanchez*, 2025 WL 2770629, at *2; *Palma v. LaRose*, Case No. 3:25-cv-1942-BJC-MMP (S.D. Cal. Aug. 11, 2025), ECF No. 14; *Rokhfirooz v. LaRose*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal. Sept. 15, 2025).

Respondents argue third that 8 U.S.C. § 1252(b)(9) bars judicial review of Petitioner's claims because Petitioner is challenging the basis upon which he is detained, and the exclusive means of judicial review of such claims is a petition for review to a court of appeals. (Doc. 5 at 4–6 (citing *Reno*, 525 U.S. at 483).) Section 1252(b)(9) provides that judicial review of "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."

Section 1252(b)(9) was "intended to 'channel judicial review over final orders of removal to the courts of appeals,' not 'foreclose all judicial review of agency actions' touching on deportation proceedings writ large." *Salvador v. Bondi*, Case No. 2:25-cv-07946-MRA-MAA, 2025 WL 2995055, at *4 (C.D. Cal. Sept. 2, 2025) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)). The Supreme Court has explained that practically any question of fact or law related to immigration detention technically arises from actions taken to remove a noncitizen "in the sense that the [noncitizen's] injuries would never have occurred if they had not been placed in detention." *Jennings*, 583 U.S. at 293. But "cramming judicial review of those questions into the review of final removal orders would be absurd." *Id.* In rejecting such an expansive interpretation of § 1252(b)(9), the *Jennings* court reasoned:

///

>Interpreting 'arising from' in this extreme way would . . . make claims of [unlawful] detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly [unlawful] detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

*Id.* at 293.

This logic applies equally here. As discussed above, Petitioner challenges the legality of his continued detention rather than a final order of removal. Accordingly, the Court finds that § 1252(b)(9) does not strip this Court of jurisdiction. *See also Salvador*, 2025 WL 2995055, at *5 (rejecting similar argument under § 1252(b)(9); *Gomez Garcia v. Noem*, Case No 5:25-cv-02771-ODW (PDx), 2025 WL 2986672, at *3–4 (C.D. Cal. Oct. 22, 2025) (same); *Noori v. Larose*, Case No.: 25-cv-1824-GPC-MSB, 2025 WL 2800149, at 7 (S.D. Cal. Oct. 1, 2025) (same).

**B.  Exhaustion**

Respondents also argue the Court "should deny the Petition for failure to exhaust administrative remedies" because "Petitioner is attempting to bypass the administrative scheme by not seeking a bond hearing nor appealing the hypothetical underlying bond denial to the BIA." (Doc. 5 at 6, n.2.) "Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). Although 28 U.S.C. § 2241 "does not specifically require petitions to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (cleaned up). The Court "may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (cleaned up).

"The Court, following other courts in this District, finds that exhaustion would be

futile because the [BIA] is obligated to apply the binding precedent of *Matter of Yahure Hurtado*, 29 I & N. Dec. 216 (BIA 2025) to find that detention is mandatory under 8 U.S.C. § 1225(b)(2)." *Esquivel-Ipina v. LaRose*, Case No.: 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *3–4 (S.D. Cal. Oct. 24, 2025); *see also Garcia*, 2025 WL 2549431, at 4–5 (same); *Chavez*, 2025 WL 2730228, at *3–4 (same).

### C. Due Process

#### 1. Petitioner's Entitlement to Due Process Rights

Petitioner argues that the revocation of his parole without justification or consideration of his individualized circumstances violates the Due Process Clause. (Doc. 1 at 12–15.) The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, --- F. Supp. 3d ---, 2025 WL 2084921, at *3 (N.D. Cal. 2025). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions of release.'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Respondents argue in their Supplemental Response that, "[a]s an applicant for admission, the only due process rights Petitioner has are those rights statutorily afforded by Congress." (Doc. 11 at 2 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–40 (2020)).) Thus, in Respondents' view, Petitioner detention does not violate the Due Process Clause because 8 U.S.C. § 1225(b)(1)(B)(ii), which they assert Petitioner has been detained under, "does not provide him a right to have this Court determine whether he is entitled to release, nor does it provide him a right to a bond hearing before

an Immigration Judge." (Doc. 11 at 3 (citing *Jennings*, 583 U.S. at 297).) But *Thuraissigiam* addressed the due process rights of inadmissible arriving noncitizens. There, the respondent "was a noncitizen detained close to the border and shortly after unlawful entry, and keeping those characteristics in mind, the Supreme Court held that those 'in *respondent's* position ha[ve] only those rights regarding admission that Congress has provided by statute.'" *Noori*, 2025 WL 2800149, at *9 (quoting *Thuraissigiam*, 591 U.S. at 140). "This holding only reinforced the precedent that noncitizens 'on the threshold of initial entry stand[] on a different footing' than those who have 'passed through our gates.'" *Noori*, 2025 WL 2800149, at *9 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).

Here, Petitioner is not an "arriving" noncitizen but one that has been present in the United States for 11 months. "This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal." *Noori*, 2025 WL 2800149, at *10 (citing *Yamataya v. Fisher*, 189 U.S. 86, 87, 99–100 (1903) ("[T]he deportation of an alien [present in the United States for four days] without provision for such a notice and for an opportunity to be heard was inconsistent with the due process of law required by the 5th Amendment of the Constitution"). Thus, Petitioner "has passed through our gates" and "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Mezei*, 345 U.S. at 212.

### 2. Respondents' Adherence to Due Process

To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Court must consider: (1) "the private interest that will be affected by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court finds that all three factors support a finding that Respondents' revocation of Petitioner's parole without reasoning or an opportunity to be heard deprived Petitioner of his due process rights. First, Petitioner has a significant liberty interest in remaining out of custody pursuant to his humanitarian parole. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."); *Morrissey*, 408 U.S. at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life."); *Pinchi*, 2025 WL 2084921, at *4 ("[The petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [the petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria.").

"Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing [him] a reason for revocation or giving [him] an opportunity to be heard." *Gonzalez Salazar v. Casey*, Case No.: 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025); *see also Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (finding where, as here, Petitioner "has not received any bond or custody redetermination hearing," the "risk of an erroneous deprivation of liberty is high."). Civil immigration detention is permissible only to prevent flight or protect against danger to the community. *Zadvydas*, 533 U.S. at 690. Here, there is no evidence that Petitioner's detention would serve either purpose. "Since DHS's initial determination that Petitioner should be paroled because [he] posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed." *Id.* (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.")). To the contrary, Petitioner is "an individual with no criminal history anywhere in the world" and is not a flight risk, as "he was arrested while appearing at [his] immigration proceedings." (Doc. 1 at 17.)

Third, Respondents' interest in detaining Petitioner without reasoning or a hearing is low. *See Pinchi*, 2025 WL 2084921, at *5 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). "Therefore, because Respondents detained Petitioner by revoking [his] parole in violation of the Due Process Clause, [his] detention is unlawful." *Gonzalez Salazar*, 2025 WL 3063629, at *5; *accord Noori*, 2025 WL 2800149, at *11 (granting habeas petition upon finding that summary revocation of the petitioner's parole violated his due process rights).

## D.   APA[2]

Petitioner argues that Respondents violated the APA by "categorically revoking Petitioner's parole without any description of the reasons therefore and detaining the Petitioner without consideration of his individualized facts and circumstances." (Doc. 1 at 17.) Respondents do not specifically respond to Petitioner's APA arguments. (*See generally* Docs. 5, 11.) Instead, they argue that 8 U.S.C. § 1225(b) mandates detention throughout the completion of removal proceedings. (Doc. 5 at 6–7; Doc. 11 at 4–5.)

Agency action may be set aside under the APA if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

---

[2]   Although the Court would grant the Petition solely on due process grounds, the APA claim provides another basis for Petitioner's release.

10

3:25-cv-02620-RBM-JLB

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

"[T]he touchstone of 'arbitrary and capricious' review under the APA is 'reasoned decisionmaking.'" *Altera Corp. & Subsidiaries v. Comm'r*, 926 F.3d 1061, 1080 (9th Cir. 2019) (quoting *State Farm*, 463 U.S. at 52). "[A]n agency's action can only survive arbitrary or capricious review where it has articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Alliance for the Wild Rockies v. Petrick*, 68 F.4th 475, 493 (9th Cir. 2023) (cleaned up). Humanitarian parole is granted "on a case-by-case basis for urgent humanitarian reasons or significant public benefit," and the statute states that "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). Therefore, pursuant to statute, "revocation should only occur when (1) the parole's purpose is served or (2) when humanitarian reasons and public benefit are no longer warranted, *and* the noncitizen is provided written notice." *Noori*, 2025 WL 2800149, at *13 (citing *Y-Z-L-H v. Bostock*, --- F. Supp. 3d ---, 2025 WL 1898025, at *12–13 (D. Or. July 9, 2025)) (emphasis in original).

Here, although Petitioner received a mass email about the revocation of his parole (Doc. 1 at 7), neither of the statutory conditions for revocation are met. First, Petitioner was paroled into the United States based on his intent to seek asylum; this was the purpose of his parole. (*Id.* at 2, 3, 8.) Petitioner's asylum proceedings were ongoing when Respondents issued and executed the revocation of Petitioner's parole. (*Id.* at 3–4.) Accordingly, the purpose of Petitioner's parole had not been served. *Accord Noori*, 2025 WL 2800149, at *13. Second, the public benefit and humanitarian reasons still warrant Petitioner's presence in the United States. According to the "Parole Directive" issued by DHS in 2009, "if an asylum-seeker establishes her identity and that she presents neither a flight risk nor a danger to the public, her detention 'is <u>not</u> in the public interest,' and thus ICE '<u>should</u>, absent additional factors . . . parole the [noncitizen]." *Mons v. McAleenan*,

Civil Action No. 19-1593 (JEB), 2019 WL 4225322, at *2 (D.D.C. Sept. 5, 2019) (emphasis in original). As discussed above, there is no evidence that Petitioner is a flight risk or a danger to the public. (*See supra* Section III.C.2.) And Petitioner was forced to flee because of "extortion and death threats by one of the transnational criminal organizations in Guatemala." (Doc. 1 at 7.) Therefore, because there is no indication that the purpose of Petitioner's parole has been served or that humanitarian reasons no longer justify it, Respondents did not comply with either clause of 8 U.S.C. § 1182(d)(5)(A).

Even if Petitioner had not been granted humanitarian parole, revocation of his parole would have required an individualized determination. *See Bostock*, 2025 WL 1898025, at *13–14 (finding parolee must receive written notice of impending revocation with reasons for revocation); *Padilla v. U.S. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals."); *but see Doe v. Noem*, 152 F.4th 272, 286 (1st Cir. 2025) ("The context of the statute, here, however, does not indicate that the Secretary must engage in individualized terminations of parole.").

Respondents have not "articulated a satisfactory explanation for [their] action" to revoke Petitioner's parole. *Altera Corp.*, 926 F.3d at 1080. Moreover, "by denying Petitioner the required procedure before purporting to terminate his parole, Respondents acted arbitrarily and capriciously and violated the APA." *Bostock*, 2025 WL 1898025, at *13.

### IV. CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting parole and Form I-94.
2. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before an

immigration judge to determine whether detention is warranted. Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[3]

**IT IS SO ORDERED.**

DATE: November 13, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[3] This relief has been granted in similar matters. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1089 (E.D. Cal. 2025); *Duong v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2689266, at *7–10 (N.D. Cal. 2025); *Pinchi*, 2025 WL 2084921, at *5; *Gonzalez Salazar*, 2025 WL 3063629, at *6; *Abdul Kadir v. Larose*, Case No.: 25cv1045-LL-MMP, 2025 WL 2932654, at *6 (S.D. Cal. Oct. 15, 2025); *Matute v. Wofford*, No. 1:25-cv-01206-KES-SKO (HC), 2025 WL 2495767, at *8 (E.D. Cal. Oct. 3, 2025).